UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JUDY AGUILAR,

        Plaintiff,

    v.

WILFRIDO CORRAL, an individual;
BOARD OF TRUSTEES OF CALIFORNIA
STATE UNIVERSITY; DOES 1 TO 25,
inclusive; DOE CORPORATION 1 TO
DOE CORPORATION 1-10, inclusive,

        Defendants.

NO. CIV. S-07-1601 LKK/KJM

O R D E R

Plaintiff Judy Aguilar alleges that she was sexually harassed while a student at California State University. She has brought suit against one of her former professors, Wilfrido Corral, and the Board of Trustees of California State University ("CSU Board"). Pending before the court are two motions to dismiss, one filed by Corral and one by the CSU Board. The court resolves the motions upon the parties' briefs and after oral argument. For the reasons explained below, the motion to dismiss is granted in part and denied in part.

1

# I. Background[1]

In the fall of 2005, plaintiff took a Spanish language class at CSU Sacramento with professor Wilfrido Corral, who is employed by the CSU Board. Compl. ¶ 13. While taking the class, plaintiff told defendant Corral that she was falling behind in her studies due to stress in her marriage, and asked Corral for help. Compl. ¶ 14.

After class one day in November 2005, Corral asked plaintiff how things were going for her at home. Compl. ¶ 15. Plaintiff responded that she was still having problems but that she was taking things one day at a time. Id. Corral then allegedly lean in toward plaintiff and told plaintiff that she could hold out sexually on her husband. Id. He also allegedly told plaintiff that he had a high libido and that he had previously had an affair with his present wife while still married to his first wife. Id. Corral then asked plaintiff what type of birth control she was using and where she lived. Id. Corral said not to worry about plaintiff's husband because he would help her, and then hugged and kissed plaintiff. Id.

Plaintiff maintains that throughout all the fall 2005 semester, Corral would "leer, gaze and stare" at plaintiff's breasts both in the classroom and wherever else she encountered him. Compl. ¶ 17. Plaintiff took a subsequent Spanish class from Corral the following semester -- a class that she alleges she

---

[1] As alleged in plaintiff's complaint.

needed to take in order to obtain her degree -- and alleges that this same staring occurred in the spring 2006 semester. Id.

In April 2006, Corral invited plaintiff and a close friend of plaintiff out to dinner to celebrate the birthday of plaintiff's friend. Compl. ¶ 19. Plaintiff alleges that she agreed to go in order to address Corral's previous conduct and the problems it had caused her. Id. Plaintiff alleges that defendant Corral discussed sexual matters during the dinner, such as suggesting that if a person was in a bad relationship, it was okay to cheat. Id. After dinner was over, Corral hugged and kissed plaintiff. Id.

On another occasion, when plaintiff was walking to class, she pulled her backpack up on her shoulders, which caused her shirt to rise, and defendant remarked from behind her that he was watching her. Compl. ¶ 23.

Plaintiff alleges that she experienced anxiety attacks as a result of Corral's actions and missed class sessions as a result of the anxiety. Compl. ¶ 22. On November 6, 2006, plaintiff filed a discrimination and sexual harassment complaint against defendants CSU and Corral with the California Victims Compensation and Government Claims Board ("Government Claims Board"). On February 22, 2007, the Government Claims Board rejected plaintiff's claim.

In the present action, plaintiff alleges six causes of action: (1) sexual harassment, (2) "violation of public policy," (3) "ratification of acts of employee," (4) intentional infliction of emotional distress, (5) violation of Title IX, 20 U.S.C. § 1681 et seq., and (6) breach of contract. In her opposition to the motions

to dismiss, she abandoned her breach of contract claim.

## II. Standard

On a motion to dismiss, the allegations of the complaint must be accepted as true. See Cruz v. Beto, 405 U.S. 319, 322 (1972). The court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. See Retail Clerks Intern. Ass'n, Local 1625, AFL-CIO v. Schermerhorn, 373 U.S. 746, 753 n.6 (1963). Thus, the plaintiff need not necessarily plead a particular fact if that fact is a reasonable inference from facts properly alleged. See id.; see also Wheeldin v. Wheeler, 373 U.S. 647, 648 (1963) (inferring fact from allegations of complaint).

In general, the complaint is construed favorably to the pleader. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). The court may not dismiss the complaint if there is a plausible, reasonably founded hope that the plaintiff may show a set of facts consistent with the allegations. Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1967-69 (2007). In spite of the deference the court is bound to pay to the plaintiff's allegations, however, it is not proper for the court to assume that "the [plaintiff] can prove facts which [he or she] has not alleged, or that the defendants have violated the . . . laws in ways that have not been alleged." Associated General Contractors of California, Inc. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983).

////

////

### III. Analysis

**A. Sexual Harassment**

Plaintiff's first cause of action is for sexual harassment. Both defendants appear to concede that California statutes recognize a cause of action for sexual harassment, see, e.g., Cal. Educ. Code § 66250 et seq. ("Sex Equity in Education Act"), but argue for dismissal on the basis that plaintiff has not specifically identified these statutes in her complaint. A plaintiff, however, "is not required to state the statutory . . . basis for his [or her] claim, only the facts underlying it." McCalden v. California Library Ass'n, 955 F.2d 1214, 1223 (9th Cir. 1990). See also Haddock v. Bd. of Dental Exam'rs of California, 777 F.2d 462, 464 (9th Cir. 1985) (complaint "should not be dismissed if it states a claim under any legal theory, even if the plaintiff erroneously relies on a different legal theory"). Accordingly, the court denies the motion to dismiss the sexual harassment claim.

**B. Violation of Public Policy**

Plaintiff's second cause of action is titled "Violation of Public Policy." She argues that defendants have violated public policy through (1) violating Article 1, Section 8 of the California Constitution and (2) violating the California statutes that underlie her sexual harassment claim. Both arguments are unavailing.

First, Article 1, Section 8 of the California provides that "[a] person may not be disqualified from entering or pursuing a

5

business, profession, vocation or employment because of sex, race, creed, color or national or ethnic origin." Claims pursuant to this section "'may only be brought where a plaintiff has been denied entrance into a profession or particular employment or terminated from the same.'" <u>Madison v. Motion Picture Set Painters and Sign Writers Local 729</u>, 132 F. Supp. 2d 1244, 1255 (C.D. Cal. 2000). Because plaintiff's claim has nothing to do with employment, she cannot state a claim under this section.

Second, although the California statutes cited by plaintiff, <u>e.g.</u>, Cal. Educ. Code § 66251, may support a cause of action for sexual harassment, there is no reason that violation of those statutes would give rise to a derivative cause of action in tort.[2] Plaintiff has cited no authority (and the court has similarly not found any support) for the proposition that a cause of action for "violation of public policy" exists when a teacher harasses a student. Rather, the tort of "violation of public policy" is typically recognized in the employment context, where, for example, an employee has been discharged for engaging in socially desirable behavior. Accordingly, the court grants the motion to dismiss the "Violation of Public Policy" claim.

---

[2] Furthermore, even if the court were to recognize such a cause of action, it would only apply to defendant Corral, because the CSU Board, as a public entity, enjoys immunity from common law causes of action. Cal. Gov't Code § 815 ("Except as otherwise provided by statute: [] A public entity is not liable for an injury").

6

**C. Ratification of Acts of Employee**

Plaintiff's third cause of action is titled "Ratification of Acts of Employee" and is directed against only the CSU Board. Part of this cause of action merely restates the CSU Board's liability for sexual harassment under plaintiff's first cause of action.[3] Part of this cause of action is distinct, however, in that plaintiff argues that the CSU Board had a mandatory duty to provide an environment free from sexual harassment. Compl. ¶ 41 ("Defendant Board of Trustees ratified the acts of Defendant Corral by failing to act in a manner which protected the female students of the university.").

Section 815.6 of the California Government Code provides for mandatory duty claims. There are three elements to mandatory duty claims: (1) the public entity is under a mandatory duty imposed by an enactment; (2) the enactment was "designed to protect" against the injury claimed; and (3) the injury was "proximately caused" by the public entity's failure to discharge its mandatory duty. Dep't of Corps. v. Sup. Ct., 153 Cal. App. 4th 916, 926 (2007). "Whether a particular statute is intended to impose a mandatory duty is a question of interpretation for the courts." Nunn v. State of California, 35

---

[3] For example, plaintiff cites to Cal. Gov't Code § 815.2(a), which provides that a public entity is liable for injury proximately caused by the act of an employee within the scope of his employment, as support for her "Ratification" cause of action. This section, however, merely provides the mechanism for imposing liability on the CSU Board for any sexual harassment perpetrated by Corral, and the claim for sexual harassment is already covered by plaintiff's first cause of action.

7

1 Cal. 3d 616, 624 (1984).

2 The CSU Board argues that "a litigant seeking to plead the breach of a mandatory duty must specifically allege the applicable statute or regulation," which plaintiff has not done. Lehto v. City of Oxnard, 171 Cal. App. 3d 285, 292-93 (1985) ("Only by doing so may the public entity be advised of the factual and legal basis of the claim against it."); Id. at 293 ("Without this requirement of specificity in pleading, a court would be hard pressed to determine whether the enactment relied upon was intended to impose an obligatory duty . . . or whether it was merely advisory in character."). Nevertheless, this is a state pleading requirement, and this court applies federal procedural law to even state law claims. See, e.g., Abdoh v. City of Chicago, 930 F. Supp. 311 (N.D. Ill. 1996) ("we apply federal pleading standards in assessing the sufficiency of both federal and state claims").

Here, plaintiff explains that the CSU Board had a mandatory duty imposed by the Sex Equity in Education Act, which provides, in relevant part, that "California postsecondary educational institutions have an affirmative obligation to combat . . . sexism . . . and a responsibility to provide equal educational opportunity." Cal. Educ. Code § 66252 ("Legislative Findings and Intent"). This particular section, however, does not include any implementing guidelines or rules, which is required to establish a mandatory duty claim. See O'Toole v. Superior Court, 140 Cal. App. 4th 488, 510 (2006) (holding that a statute

1  gives rise to a mandatory duty only if the statute affirmatively
2  requires that a particular action be taken and provides
3  implementing guidelines or rules).  Moreover, statements of
4  legislative intent, such as those embodied in section 66252, do
5  not create a mandatory duty.  See <u>Shamsian v. Dep't of</u>
6  <u>Conservation</u>, 136 Cal. App. 4th 621, 633 (2006) ("a statement of
7  legislative intent may not give rise to a mandatory duty").
8       Nevertheless, one section of the Sex Equity in Education
9  Act does have implementing guidelines.  Section 66281.5
10 describes, in detail, the affirmative steps that schools must
11 take to provide notification of the prohibition against sexual
12 harassment and the available remedies.  <u>E.g.</u>, Cal. Educ. Code §
13 66281.5(b) ("Each postsecondary educational institution . . .
14 shall have a written policy on sexual harassment."); <u>id.</u> §
15 66281.5(c) ("[The policy] shall include information on where to
16 obtain the specific rules and procedures for reporting charges
17 of sexual harassment"); <u>id.</u> § 66281.5(d) ("A copy of the
18 [policy] shall be displayed in a prominent location.").  Of
19 particular relevance to this case, the section provides that a
20 copy of the written sexual harassment policy "shall be provided
21 for each faculty member . . . at the beginning of the . . .
22 school year."  <u>Id.</u> § 66281.5(f).
23      That said, the court has no knowledge of whether defendant
24 Corral received a copy of the school's sexual harassment policy
25 or whether there is any disagreement between the parties as to
26 this issue.  At present, the complaint simply reads: "Defendant

9

1 Board of Trustees ratified the acts of Defendant Corral by
2 failing to act in a manner which protected the female students
3 of the university." Compl. ¶ 41. There are no factual
4 allegations to support this statement. To the extent that
5 plaintiff wishes to amend her complaint to state a claim
6 pursuant to section 66281.5, she is granted leave to do so.

     Accordingly, the motion to dismiss plaintiff's third cause of action is granted.

**D. Intentional Infliction of Emotional Distress**

     The elements of an intentional infliction of emotional distress claim are "'(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct.'" Davidson v. City of Westminster, 32 Cal. 3d 197, 209 (1982).

     "Extreme and outrageous conduct" is conduct that is so extreme that it goes beyond all possible bounds of decency tolerated in a civilized community. Id. at 209. Here, taking plaintiff's allegations as true, it is a jury question as to whether Corral engaged in conduct that would constitutes extreme and outrageous conduct.[4] Plaintiff alleges that on two

---

[4] Plaintiff alleges that the CSU Board is also liable for intentional infliction of emotional distress pursuant to the statute permitting suit against public entities for negligently discharging mandatory duties. Cal. Gov't Code § 815.6. In

10

1 occasions Corral discussed sexual matters with her and hugged
2 and kissed her; that he invited her out to dinner once with her
3 friend; that he once told her that he was watching her while
4 walking up behind her; and that he constantly stared at her
5 breasts.  It is important, however, to view the conduct in light
6 of the position of the parties, which provided defendant Corral
7 with power over plaintiff's grade and perhaps her future.
8 Whether all of the above is sufficient is a question for the
9 jury, which serves as an arbiter of society's norms.

10     Defendant Corral also argues that plaintiff has not alleged
11 severe emotional distress, given that she chose to take a class
12 with him and accepted his dinner invitation after he had already
13 allegedly hugged and kissed her in November 2005.  As noted
14 above, however, plaintiff alleges that she was required to take
15 the class for her degree, and she alleges that she only accepted
16 the dinner invitation to address his previous conduct.  Compl. ¶
17 19.  These acts do not therefore negate the possibility that
18 plaintiff in fact suffered severe emotional distress.

19     Accordingly, the court denies the motion to dismiss as to
20 the intentional infliction of emotional distress claim.
21 ///

---

addition to the defects associated with this claim noted above, intentional infliction of emotional distress is a common law tort from which public entities enjoy immunity.  Cal. Gov't Code § 815(a).  Although plaintiff attempts to rely on the Sex Equity in Education Act as a statutory basis for her intentional infliction of emotional distress claim, that statute deals only with discrimination and harassment, not some generalized notion of intentional infliction of emotional distress.

**E. Title IX**

Plaintiff also brings a claim under Title IX, which provides that "no person . . . shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). Title IX is enforceable through an implied private right of action. <u>Cannon v. Univ. of Chicago</u>, 441 U.S. 677 (1979). Because school officials may not be sued in their individual capacity as they are not grant recipients, <u>Kinman v. Omaha Pub. Sch. Dist.</u>, 171 F.3d 607, 611 (8th Cir. 1999), the court construes plaintiff's Title IX claim as directed only against the CSU Board.[5]

Sexual harassment is a form of discrimination based on sex and is actionable under Title IX. <u>Franklin v. Gwinett County Pub. Schs.</u>, 503 U.S. 60, 75 (1992). In order to prevail on her claim, plaintiff must show that a school official with the authority to take corrective action had "actual notice" of the harassment -- rather than merely constructive notice -- and

---

[5] Although the CSU Board is an arm of the state for purposes of the Eleventh Amendment, it is not immune from suit in federal court. Congress expressly abrogated state sovereign immunity for suits under Title IX in accordance with its powers under Section 5 of the Fourteenth Amendment. 42 U.S.C. § 2000d-7 ("A State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation of . . . title IX"); <u>Franks v. Kentucky Sch. for the Deaf</u>, 142 F.3d 360 (6th Cir. 1998) (upholding Title IX abrogation as constitutional exercise of Congress' powers under Section 5 of the Fourteenth Amendment).

responded with deliberate indifference. Gebser v. Lago Vista Independent Sch. Dist., 524 U.S. 274, 285-90 (1998). The reason for the actual notice requirement is said to be because Title IX does not aim to prohibit discrimination outright, per se, but simply prevents the use of federal funds to carry out discrimination; accordingly, if that discrimination can be remedied by school officials, that is a preferable outcome to the termination of funds, or, in the case of a private action, a damages award.[6] Id. at 288.

Here, plaintiff does not claim that she ever reported her own alleged harassment to any CSU official. Nevertheless, she maintains that CSU "had prior knowledge that Defendant Corral had a propensity to make sexual advances toward university female students." Compl. ¶ 40. In other words, plaintiff appears to allege that other female students complained of Corral's behavior to CSU officials, and that school officials therefore had "actual notice" of his allegedly harassing behavior.

There is no definitive guidance on whether a plaintiff's duty to demonstrate actual notice on the part of a school official may be satisfied by complaints by other students of

---

[6] Moreover, the high court has said that because Title IX creates only an implied right of action, "[i]t would be unsound . . . for a statute's express system of enforcement to require notice to the recipient and an opportunity to come into voluntary compliance while a judicially implied system of enforcement permits substantial liability without regard to the recipient's knowledge or its corrective actions upon receiving notice." Gebser, 524 U.S. at 289.

harassing behavior. Stated differently, plaintiff's position is that a knowledge of a substantial risk of abuse is sufficient to show actual knowledge. This is an issue that the Ninth Circuit has yet to rule upon, and it has divided other courts. Compare Johnson v. Galen Health Institutes, Inc., 267 F. Supp. 2d 679, 688 (W.D. Ky. 2003) ("[T]he actual notice standard is met when an appropriate official has actual knowledge of a substantial risk of abuse to students based on prior complaints by other students."), Doe A. v. Green, 298 F. Supp. 2d 1025, 1033-34 (D. Nev. 2004) (approving of substantial risk standard), Gordon ex rel. Gordon v. Ottumwa Community School Dist., 115 F. Supp. 2d 1077, 1082 (S.D. Iowa 2000) (same), Massey v. Akron City Bd. of Educ., 82 F. Supp. 2d 735, 745 (N.D. Ohio 2000) (complaints made by those other than plaintiff can establish actual notice), and Doe v. School Administrative Dist. No. 19, 66 F. Supp. 2d 57, 63-64 (D. Me. 1999) (actual notice present where there were reports that teacher had sexual relations with a student other than plaintiff) with Bayard v. Malone, 268 F.3d 228, 238 (4th Cir. 2001) (knowledge of potential for abuse not sufficient to establish actual notice).[7]

The majority rule that seems to have emerged from these

---

[7] See also Escue v. Northern OK College, 450 F.3d 1146, 1153-54 (10th Cir. 2006) (acknowledging but not resolving disagreement over whether notice may consist of prior complaint or must consist of notice regarding current harassment); Grandson v. University of Minnesota, 272 F.3d 568, 575-76 (8th Cir. 2001) (finding that complaints received over several years regarding the level of sports funding were not sufficient to show actual notice where complaints were simply part of public debate).

14

cases is that "actual notice requires more than a simple report of inappropriate conduct by a teacher" but "does not set the bar so high that a school district is not put on notice until it receives a clearly credible report of sexual abuse from the plaintiff-student." Doe, 66 F. Supp. 2d at 63; accord Reese v. Jefferson School Dist. No. 14J, 208 F.3d 736, 740 (9th Cir. 2000) (one alleged instance of student-on-student harassment was not enough to put school district on actual notice of worse and ongoing harassment). "[T]he institution must have possessed enough knowledge of the harassment that it reasonably could have responded with remedial measures to address the kind of harassment upon which plaintiff's legal claim is based." Crandell v. New York College of Osteopathic Med., 87 F. Supp. 2d 304, 320 (S.D.N.Y. 2000).

The advantage of this rule is that it prevents schools from escaping liability where officials knew that a teacher was engaging in behavior that raised warning flags -- even to the point where there was a substantial certainty that harassment was occurring -- so long as they did not know of harassment toward a particular student. The disadvantage of this rule is that it prevents narrowly tailored remedial responses. For instance, under the facts of this case, given that plaintiff alleges that she had to take a subsequent class with Corral necessary for her degree, the school could have arranged an alternative (such as offering the class from another instructor). A narrow remedy may be much preferable to a broad

one (such as firing the teacher, or prohibiting all student contact) where there has not been a serious or credible history of complaints.

Nevertheless, preventing discrimination where a school has sufficient information to take remedial measures is the paramount concern. Accordingly, the court adopts the majority rule that knowledge of a substantial risk of harassment is sufficient to place a school on actual notice. Here, plaintiff alleges that other students complained of harassment by Corral. If these complaints were sufficiently numerous, severe, or close in time to the instances of discrimination that she alleged -- all of which are factual issues -- actual notice may exist.

The CSU Board also argues that, even if actual notice were present, plaintiff has failed to sufficiently plead facts to show that defendant was deliberately indifferent. Gebser, 524 U.S. at 290 (both actual notice and deliberate indifference required for Title IX claim). The nature of this element, however, is the absence of action; accordingly, the court finds that deliberate indifference has been adequately pled.

The court denies the motion with respect to plaintiff's Title IX claim.

## IV. Conclusion

For the reasons explained above, the motion to dismiss is granted in part and denied in part, with 20 days leave to amend.

IT IS SO ORDERED.

DATED  October 9, 2007.

LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT

16